UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD MONTGOMERY,

      Petitioner,

v.                                                                          Case No. 2:09-cv-10404
                                                                            Honorable Victoria A. Roberts

GREGORY MCQUIGGIN,

      Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. INTRODUCTION

This is a habeas case filed by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner

Reginald Montgomery, who is incarcerated by the Michigan Department of Corrections at the

Chippewa Correctional Facility in Kincheloe, Michigan, filed this Habeas Petition challenging

his 2004 jury-based convictions for two counts of armed robbery, one count of conspiracy to

commit armed robbery, three counts of kidnapping, one count of conspiracy to commit

kidnapping, one count of first-degree home invasion, one count of carjacking, one county of

felon in possession of a firearm, and one count of felony firearm, which occurred in Genesee

County Circuit Court.  He was sentenced, as a habitual offender, fourth offense, to concurrent

prison terms of thirty to fifty years for each of his convictions, except for the felony-firearm

conviction, for which he received the mandatory two-year prison term.  Petitioner was tried

jointly with his brother and codefendant, Jerome Montgomery, but they each had separate juries.

In his *pro se* pleadings, Petitioner alleges he is entitled to habeas relief because (1) he

was denied a fair trial by an impartial jury and counsel was ineffective for failing to object–claim

I, (2) the prosecutor committed misconduct and counsel was ineffective for failing to object–claims II and IV, (3) the trial court improperly admitted evidence–claim III, (4) the trial court erred when it failed to suppress his statement–claim V, (5) the trial court erred regarding identification evidence–claim VI, and (6) the trial court erred when it concluded that he did not meet the cause and prejudice standard excusing the procedural default for the above arguments–claim VII.

Respondent argued in his Answer to the Habeas Petition that Petitioner's claims were either non-cognizable on habeas review or procedurally defaulted.

The Court denies the Petition. The Court also declines to issue Petitioner a Certificate of Appealability.

## II. BACKGROUND

The Michigan Court of Appeals provided a summary of the facts, which is presumed correct on habeas review. *See Monroe v. Smith*, 197 F.Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F.App'x 730 (6th Cir. 2002). The Court of Appeals stated:

> Leonard Harrington and Deborah Harrington testified that on the evening of March 19, 2003, they entered their garage and were approached by two masked men who were armed. According to the Harringtons, the men threatened them, tied them up, and questioned Deborah about the jewelry store in Novi where she was the general manager. Leonard testified that Deborah was told to answer the questions and not lie or they would be killed. The Harringtons both testified that eventually a third man arrived, and Deborah testified that a woman also arrived. Deborah testified that the third man talked with her about plans to rob the Novi jewelry store. The men remained at the Harrington's home and in the early morning of March 20, 2003, Reid Adomat, Deborah's son, arrived and was apprehended by the armed men.
>
> Deborah testified that in the early morning of March 20, 2003, she was instructed to accompany one of the men to her work, and was told that Leonard and Reid would be held at separate locations as hostages. Deborah further testified that the man threatened her and her family if she did not cooperate.

2

Deborah drove to the jewelry store, where she unlocked the door and the safe. The man who accompanied her loaded up jewelry, bound her, and told her not to the call the police for ten to fifteen minutes. Deborah freed herself after ten to fifteen minutes, and called the police. At the Harrington home, Leonard and Reid claim that they were tied up and placed in the bathroom, but subsequently got loose and ran over to the neighbors' home. The neighbors called 911.

Novi Police Sergeant David Malloy testified that over $1 million in jewelry had been taken from the jewelry store. Jewelry, a fur coat, and other items were also taken from the Harrington's home. A confidential informant gave the police information that Jerome, Jerome's brother, and Yolanda Price were involved in the jewelry store robbery, which led to surveillance of Jerome. A search warrant was executed at a residence linked to Jerome, and approximately $500,000 worth of the jewelry was found as well as items that were missing from the Harrington's home. Subsequently, both Jerome and Reginald were brought in for questioning.

Detective Victor Lauria, from the Novi Police Department and Detective David Dwyre, from the Genesee County Sheriff's Department, took statements from Reginald and Jerome. Upon being brought in for questioning, Reginald was upset and indicated that he did not want his baby to grow up without a dad. Reginald stated that the robbery had been planned for a month, and indicated that Jerome, Yolanda Price, Lashawn Montgomery, and Darrell Shipman were involved. In his statement, Reginald further explained his involvement as follows: he had a black pistol, was wearing a black mask, approached the Harringtons in the garage and tied them up, later tied Reid up when he arrived, put Reid and Leonard in the bathroom, and did not go with Deborah to the jewelry store. Jerome also gave a statement in which he indicated the incident was not about the house, but was about the jewelry store. Jerome also said that he did not want to be a "snitch," but a male relative came up with the idea.

Leonard identified Reginald, at trial, as one of the men involved who had a gun. Deborah, at trial, identified Jerome as the man who accompanied her to the jewelry store. Jerome acknowledged that he received and concealed stolen property, but his defense was that the Harringtons were involved in the plan to rob the jewelry store.

*People v. Montgomery*, Nos. 255641, 255689, 2005 WL 3116520, at *1-2 (Mich. Ct. App. Nov. 22, 2005) (footnote omitted).

The jury convicted Petitioner. He was sentenced to the prison terms described above.

3

Following his sentencing, Petitioner filed a Direct Appeal with the Michigan Court of Appeals, raising what form the first four claims in his Habeas Petition. The Court of Appeals affirmed his convictions and sentences. *Montgomery*, 2005 WL 3116520, at *7-14. Petitioner filed an Application for Leave to Appeal the Court of Appeals's decision with the Michigan Supreme Court, raising the same claims raised in the Court of Appeals. On April 28, 2006, the Supreme Court denied his Application. *People v. Montgomery*, 474 Mich. 1129; 712 N.W.2d 483 (2006).

In May 2007, Petitioner filed a Post-Conviction Motion with the trial court, alleging that his statement should have been suppressed, the identification evidence was improper, and he satisfied the cause and prejudice standard by establishing that his appellate counsel was ineffective. The trial court denied the Motion on June 25, 2007. *People v. Montgomery*, No. 03-12257-FC (Genesee Cnty. Cir. Ct. June 25, 2007). Petitioner's subsequent Applications for Leave to Appeal to the state appellate courts were denied because "defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Montgomery*, No. 283343 (Mich. Ct. App. Aug. 13, 2008); *People v. Montgomery*, 483 Mich. 852; 759 N.W.2d 27 (2009).

Petitioner filed this Habeas Petition on February 2, 2009, signed and dated January 27, 2009.

## III.  DISCUSSION

### A.  Standard of Review

Petitioner's claims are reviewed against the standards established by the Antiterrorism

and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA), which

provide:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  *Id.* at 409.  "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.


The Supreme Court has explained that "[a] federal court's collateral review of a

5

state-court decision must be consistent with the respect due state courts in our federal system."
*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly
deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions
be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ----, ----, 130 S.Ct. 1855, 1862 (2010)
(quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24
(2002) ( per curiam )). "A state court's determination that a claim lacks merit precludes federal
habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's
decision." *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 786 (2011) (citing
*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that
even a strong case for relief does not mean the state court's contrary conclusion was
unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v.
Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011) (holding that "[t]his is a difficult to meet
and 'highly deferential standard for evaluating state-court rulings") (citing *Harrington*, --- U.S.
at ---, 131 S.Ct at 786 and *Woodford*, 537 U.S. at 24) (internal quotation marks omitted).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme
malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction
through appeal." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786 (citing *Jackson v. Virginia*, 443
U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). Thus, to obtain habeas relief in
federal court, a state prisoner is required to show that the state court's rejection of his claim "was
so lacking in justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct.

6

at 786-87.

## B.  Petitioner's Claims I, II, and IV

### 1.  Procedural Default–Counsel's Failure to Contemporaneously Object at Trial

As an initial matter, Respondent asserts that Petitioner's claims concerning an impartial jury (claim I) and prosecutorial-misconduct (claims II and IV) are barred from habeas review by procedural default because Petitioner failed to object to such matters at trial.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005) (same).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last explained state court judgment should be used to make that determination.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

In the present case, all of the prerequisites to a finding of procedural default are present. The Court of Appeals expressly found that Petitioner's challenge to the effectiveness of trial counsel, because of his failure to object to the impartial-jury claim and to the prosecutor's misconduct, had not been preserved for review, because of counsel's failure to make a

contemporaneous objection at trial. *Montgomery*, 2005 WL 3116520, at *7-11. The fact that the court went on to review the issue under a plain-error standard does not constitute a waiver of state procedural default rules. *See Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.").

The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763; 597 N.W.2d 130 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991) (same). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

The Michigan Court of Appeals denied relief on these claims based upon a procedural default–the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Nields v. Bradshaw*, 482 F.3d 442, 450 (6th Cir. 2007). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Harrington*, --- U.S. at ---, 131 S.Ct. at 787 (same). A petitioner must present a

8

substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such

reasons include interference by officials, attorney error rising to the level of ineffective

assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably

available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner alleges ineffective assistance of trial counsel as cause to excuse his procedural

default. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set

forth a two-prong test for determining whether a habeas petitioner has received the ineffective

assistance of counsel. First, a petitioner must prove that counsel's performance was deficient.

That requires a showing that counsel made errors so serious that he or she was not functioning as

counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the

petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's

errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

The Supreme Court has recently confirmed that a federal court's consideration of

ineffective-assistance-of-counsel claims, arising from state-criminal proceedings, is quite limited

on habeas review due to the deference accorded trial attorneys and state appellate courts

reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both

'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, ---

U.S. at ---, 131 S.Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the

question is not whether counsel's actions were reasonable. The question is whether there is any

reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Petitioner cannot establish that trial counsel was ineffective so as to establish cause, nor

can he establish that he was prejudiced, because these claims lack merit for the reasons stated by the Michigan Court of Appeals and as further discussed *infra*.

Petitioner has also not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### 2.   Claim I–Impartial Jury

In his first habeas claim, Petitioner argues that his right to a fair and impartial jury was violated because of pretrial publicity and counsel was ineffective for failing to request a change in venue.

The United States Supreme Court has held that if prejudicial pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury, the court should grant the defendant a change in venue. *Irvin v. Dowd*, 366 U.S. 717, 722-724 (1961); *Ritchie v. Rogers*, 313 F.3d 948, 956 (6th Cir. 2002). Prejudice resulting from pretrial publicity can be presumptive or actual. *Joseph v. Coyle*, 469 F.3d 441, 468 (6th Cir. 2006), *cert. denied*, 549 U.S. 1280 (2007); *Nevers v. Killinger*, 169 F.3d 352, 362 (6th Cir. 1999), *abrogated on other grounds*, *Harris v. Stovall*,

10

212 F.3d 940, 942-943 (6th Cir. 2000). Presumptive prejudice from pretrial publicity occurs in a case where an inflammatory, circus atmosphere pervades both the courthouse and surrounding community. *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007); *Ritchie*, 313 F.3d at 952-953. For that presumption to apply, the trial must be entirely lacking in the solemnity and the sobriety required of a system that subscribes to any notion of fairness and rejects the verdict of a mob. *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000); *Nevers*, 169 F.3d at 363. Cases where prejudice from pretrial publicity is presumed are extremely rare, and even pervasive, adverse publicity does not inevitably lead to an unfair trial. *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998).

In a case where pretrial publicity cannot be presumed to be prejudicial, the trial court must still determine whether the "publicity rises to the level of actual prejudice." *Ritchie*, 313 F.3d at 962 (internal quotation marks omitted). The primary tool for determining if actual prejudice has occurred is "a searching voir dire of prospective jurors." *Id.* The Supreme Court has rejected the notion that the trial court "must ask questions regarding the content of the news reports [] to which potential jurors may have been exposed." *Joseph*, 469 F.3d at 468 (citing *Mu'Min v. Virginia*, 500 U.S. 415, 424-25 (1991)). Negative media coverage by itself is insufficient to establish actual prejudice, and the existence of a juror's preconceived notion as to the guilt or innocence of the defendant, without more, is not sufficient to rebut the presumption of a prospective juror's impartiality. *Ritchie*, 313 F.3d at 962. The prospective juror must be able to lay aside his or her impressions or opinions and render a verdict based upon the evidence presented in court. *Id.*

In addressing this claim, the Michigan Court of Appeals stated:

Here, Reginald has attached nothing to his appellate brief regarding the case–not a single newspaper story to support his contentions. There is no showing of any publicity that constituted unrelenting prejudicial pretrial publicity in Genesee County that is invidious or inflammatory. Regardless, the existence of pretrial publicity, standing alone, does not necessitate a change of venue. Whether the jury was actually prejudiced by the publicity or whether there was an atmosphere that created a probability of prejudice must be considered.

In *Tyburski*, *supra*, our Supreme Court held that when pretrial publicity creates a danger of prejudice, the trial court has several options to uncover potential juror bias and achieve the goal of impaneling an impartial jury. One of these options is that the trial court can permit the attorneys to participate in the voir dire. Another option is that the trial court can question individual potential jurors or small groups away from the remaining veniremen. Whatever option the lower court selects, it must "elicit enough information for the court to make its own assessment of bias." The Supreme Court opined that trial courts "should be allowed wide discretion in the manner they employ to achieve the goal of an impartial jury."

In this case, the trial court attempted to achieve the goal of an impartial jury through voir dire. "The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." "The trial court has discretion in both the scope and the conduct of voir dire."

The record does not support defendant's claim that the trial court failed to ensure that the jury was impartial. To the contrary, the trial court was aware of the issue of pretrial publicity and took appropriate steps to impanel an impartial jury. Specifically, the trial court conducted individual, sequestered voir dire of the prospective jurors who had received some pretrial publicity and questioned them individually, to determine how much the potential jurors had heard or seen from the media and what impact that information would have on the jurors' ability to remain unbiased. In addition, apparently mindful of the fact that the "attorneys are more familiar with the complexities and nuances of the case" and "are in a better position than the trial court to ask in-depth questions designed to uncover hidden bias," the trial court also permitted the prosecutor and defense counsel to participate in the voir dire.

The facts of this case are not similar to the facts in *Tyburski*, where the trial court did not sequester the prospective jurors to conduct individual voir dire and did not permit the attorneys to participate in the voir dire. We conclude that the trial court, which was on notice of the likelihood of juror bias as a result of

12

pretrial publicity, exercised caution in the manner it conducted voir dire. By conducting individual, sequestered voir dire and permitting the attorneys to ask questions about bias as a result of media exposure, the trial court's conduct went above and beyond what our Supreme Court required in *Tyburski*. The trial court satisfied its duty "to conduct a thorough and conscientious voir dire designed to elicit enough information for the court to make its own assessment of bias." Voir dire functioned exactly as it should have. There is nothing on the record supporting Reginald's claim that the trial court should have *sua sponte* changed venue or continued the trial for a later date. Reginald has presented no plain error affecting his substantial rights with regard to venue and the trial court's failure to enter a continuance *sua sponte*.

*Montgomery*, 2005 WL 3116520, at 7-8 (citations omitted).

The Court agrees with the Michigan Court of Appeals's decision and concludes that it is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. The record reveals that, during voir dire, the trial court told the members of the jury array that the case had received some pretrial publicity and asked how many had been exposed to that publicity. Only fourteen to fifteen people out of the entire array raised their hands. The trial court then separated those people from the remainder of the array and questioned each one individually. The trial court excused two members for cause on the basis of race. The trial court excused a third juror for cause because of a closed-head injury, and a fourth because he was financially unable to sit as a juror. The remaining fourteen to fifteen jurors indicated they would be able to decide the case on the basis of the evidence presented at trial. The trial court also instructed the jury to only consider the admitted evidence.

The potential jurors were extensively questioned by the attorneys and the trial court, using one day of impaneling, to determine if they could be impartial and lay aside any preexisting knowledge and opinions, if any existed. The final jurors that were seated as the panel swore under oath that they were able to keep an open mind as to the guilt or innocence of

13

Petitioner in this case.  Accordingly, the Court finds that Petitioner is not entitled to habeas relief with respect to this claim.

### a.  Ineffective-Assistance-of-Counsel Claim Regarding the Above

Petitioner also claims that trial counsel was ineffective for failing to move for a change of venue because of the pretrial publicity.

The Court of Appeals, limiting its review to mistakes apparent on the record, found that a change of venue was not justified.  There was nothing on the record supporting pervasive pretrial publicity.  Additionally, the trial judge and the attorneys extensively questioned the prospective jurors to uncover any potential bias.

Moreover, the Court of Appeals also found that the decision to move or not move for a change of venue was a matter of trial strategy.  It stated:

> Defense counsel participated in questioning the jurors, used his peremptory challenges, and some potential jurors were dismissed for cause.  It is apparent that defense counsel adequately questioned the jurors and determined that he could address potential prejudice through the voir dire process.  His decision not to move for a change of venue or a continuance was a matter of trial strategy and was not ineffective in light of his other efforts to alleviate prejudice.  Moreover, there is no indication on record, in this case, that the pretrial publicity was inflammatorily prejudicial.  As a result, we reject defendant's argument that he received ineffective assistance of counsel.

*Montgomery*, 2005 WL 3116520, at *9 (citations omitted).

The Court concludes that the Court of Appeals's decision with respect to this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  Trial counsel was not ineffective for failing to object to a meritless claim.  Petitioner is not entitled to habeas relief in regard to claim I.

### 3.  Claims II and IV– Prosecutorial Misconduct

In his second habeas claim, Petitioner alleges that the prosecutor committed misconduct during his opening statement and, in his fourth habeas claim, he alleges that the prosecutor committed misconduct during his closing argument.  Again, the Court of Appeals rejected these claims after conducting a plain-error review because Petitioner did not make a contemporaneous objection at trial.  The Court of Appeals found no prosecutorial misconduct that amounted to plain error or deprived Petitioner of substantial rights.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on his claim, Petitioner must demonstrate that the prosecutor's remarks infected the trial with such unfairness "as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

Courts in this Circuit employ a two-prong test for determining whether prosecutorial misconduct rendered a trial fundamentally unfair.  *Slagle v. Bagley*, 457 F.3d 501, 515 (6th Cir. 2006) (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)).  First, a court asks whether the prosecutor's conduct or remarks were improper.  *Id.* at 516.  Second, if the conduct or remarks were improper, a reviewing court must consider the following four factors to determine "whether the improper acts were so flagrant as to warrant reversal: (1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.*

Claims of prosecutorial misconduct also are subject to harmless-error analysis.  *Mason v.*

15

*Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).  An error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Petitioner first asserts that the prosecutor engaged in misconduct by offering his personal opinion of the facts in the case ("[i]t is my job to tell you the background"), and vouched for Petitioner's guilt in opening statement.  A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof."  *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."  *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted).

The Court of Appeals concluded that, reviewing the comments in context, the prosecutor was advising the jury of what evidence was going to be presented at trial and not vouching for Petitioner's guilt.  *Montgomery*, 2005 WL 3116520, at *10.  The Court of Appeals stated: "[w]hen the prosecutor was using the word "I," he was using it as Detective Dwyre speaking, and he made this clear to the jury.  The prosecutor before going into the challenged statement stated that "this is Detective Dwyre speaking."  *Id.*  The Court of Appeals also acknowledged that the trial court properly informed the jurors on more than one occasion that the statements of

the attorneys were not evidence.  *Id.*

The Court finds that decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The prosecutor's comments were based upon the proposed evidence at trial, did not mislead the jury, and were appropriate for opening statements. Petitioner has not shown that they affected the fairness of his trial.

Petitioner next asserts that the prosecutor engaged in misconduct by stating that he (Petitioner) had refused to answer questions posed by the arresting officers.  The prosecutor may not use a defendant's decision to remain silent as substantive evidence of guilt.  *Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009).

In addressing this issue, the Court of Appeals stated:

> The prosecutor, in his opening statement, discussed the statement Reginald gave and that he declined to answer some of the questions while he was giving the statement.  Viewed in context there was nothing improper in the prosecutor's statement, as it was not discussing any silence by Reginald that was attributable to invocation of his Fifth Amendment right or a reliance on *Miranda*. Instead, Reginald had waived his right to silence and these were questions that Reginald just decided not answer.  In addition, the trial court informed the jury on more than one occasion that the statements of the attorneys were not evidence. As such, with regard to the challenged statements by the prosecution, we find no plain error affecting defendant's substantial rights.

*Montgomery*, 2005 WL 3116520, at *11.

The Court finds that there is no merit to Petitioner's allegation that the prosecutor's use of the word  "I," when he summarized the expected testimony of the detective, suggested the prosecutor's personal opinion.  Rather, the prosecutor clearly indicated that his use of the word "I" represented the detective speaking.  Again, the Court finds that the prosecutor's comments were based upon the proposed evidence at trial, did not mislead the jury, and were appropriate for opening statements.  Petitioner has failed to demonstrate prejudice.

17

Petitioner next argues that the prosecutor engaged in misconduct during closing argument when he distorted the burden of proof, vouched for his own opinion of the credibility of the witnesses and stated that the complaining witnesses were telling the truth.  The Michigan Court of Appeals concluded on review of this claim that the prosecutor's remarks were a fair response to the defense's theory and that no prejudice resulted.

A prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or "suggest that the defendant ha[s] the burden of proof or any obligation to produce evidence to prove his innocence."  *Joseph*, 469 F.3d at 474 (quoting *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993)).

The Court of Appeals ruled that the prosecutor was not vouching for his opinion or distorting the burden, but rather was arguing that the evidence supported that its witnesses were credible and the defense witnesses were not.  The Court agrees and concludes that the prosecutor's remarks during closing arguments were either proper or not so flagrant as to require reversal.  Moreover, any potential prejudice arising from the prosecutor's conduct was alleviated by the trial court's jury instructions that the attorneys' comments were not evidence, that Petitioner was innocent until proven guilty, and that they should only consider the evidence presented at trial in rendering a verdict.  Jurors are presumed to follow a trial court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *see also United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").  Petitioner has not shown that any prosecutorial misconduct rendered his trial fundamentally unfair.  Habeas relief is not warranted on these claims.

18

### a.  Ineffective-Assistance-of-Counsel Claim Regarding the Above

As discussed, *supra*, there is no merit to Petitioner's contentions that the prosecutor's opening statements and closing arguments were improper.  Counsel is not required to advocate a meritless position.  The Court finds that the Court of Appeals's resolution of Petitioner's ineffective-assistance-of-counsel claim with respect to prosecutorial misconduct is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Habeas relief is not warranted.

### C.  Claim III Not Procedurally Defaulted

### 1.  Improper Admission of Evidence

In his third habeas claim, Petitioner alleges that his federal constitutional rights were violated because of the admission of victim Deborah Harrington's testimony regarding threats made against her and her family.  Petitioner cannot prevail on this claim because it is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993); *see also Olsen v. McFaul*, 843 F.2d 918, 933 (6th Cir. 1988) (such claims are almost always rejected as grounds for granting a writ of habeas corpus). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court.  *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979).

The Court of Appeals addressed, and rejected, this issue, stating:

> Beginning in his opening statement, Reginald's counsel attacked
> Deborah's credibility regarding her description information of Reginald, and

discussed her leaving things out when talking to the police. Reginald's counsel also noted in opening that the jury would hear information that may even point in the direction of the Harringtons.

The threatening phones calls were not raised during the prosecution's direct examination of Deborah. Jerome's counsel cross-examined Deborah in front of both juries regarding her withholding information from the police. The prosecutor asked to admit testimony that Deborah had been threatened over the phone, and was afraid for her family. Counsel for both Jerome and Reginald objected. After listening to arguments, the trial court agreed to allow testimony regarding the phone calls, but only with an instruction that the calls were not made by either Jerome or Reginald. Subsequently, during cross-examination of Deborah, Reginald's counsel asked her about not providing evidence to the police regarding a female and specifically asked about her and Leonard's fear. Deborah answered that they feared for their lives because of the threats and were told not to give information. On redirect, the trial court allowed testimony to explain Deborah's reaction in that she had death threats over the telephone that made her reluctant to give the statements. Evidence of the threatening phone calls were significantly relevant to Deborah's credibility that had been attacked by Reginald's opening statement and on cross-examination. This testimony was used to explain Deborah's reluctance to give further evidence to the police, thus, was relevant to her credibility.

\* \* \*

The testimony was very probative because the case in large part was based on credibility, and this testimony was significant to Deborah's credibility, which Reginald's counsel made an issue of in opening statement. The trial court minimized the prejudice by instructing the jury to accept as fact that neither Reginald nor Jerome made the calls. In addition, the testimony was not that prejudicial because Deborah had already alluded to threats in her testimony. This testimony helped to alleviate confusion. Further, as noted, Reginald's counsel made the matter relevant by raising issue with Deborah's credibility in opening statement. A party may not seek appellate relief based upon an evidentiary error to which he contributed by plan or negligence. Without the testimony there may have been confusion as to whether threats were made by Reginald and Jerome. We find that the trial court did not abuse its discretion.

*Montgomery*, 2005 WL 3116520, at \*12-13 (footnote and citation omitted).

Petitioner has not shown that the admission of Deborah's testimony rendered his trial

fundamentally unfair. As noted by the Michigan Court of Appeals, the testimony was probative

because the case was based on credibility and Deborah's testimony was significant to her

credibility, which Petitioner made an issue of in opening statement. Even if the trial court erred,

any error in admitting the evidence was harmless beyond a reasonable doubt. *See Brecht*, 507

U.S. at 637 (ruling that for purposes of federal habeas review, a constitutional error that

implicates trial procedures is considered harmless if it did not have a "substantial and injurious

effect or influence in determining the jury's verdict"); *see also Fry v. Pliler*, 551 U.S. 112, 117-

18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v.

Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this

circuit). This claim is noncognizable and Petitioner is not entitled to habeas relief.

### D. Claims V and VI–Raised on Collateral Review

### 1. Procedurally Defaulted

In his fifth habeas claim, Petitioner alleges that the trial court erred when it held that his

statement should not be suppressed. In his sixth habeas claim, Petitioner alleges that the trial

court erred in its ruling regarding identification evidence. Respondent contends that these claims

are barred by procedural default because Petitioner presented them for the first time to the state

courts on collateral review and those courts relied upon a procedural bar to deny him relief.

As previously discussed, federal habeas relief may be precluded on claims that a

petitioner has not presented to the state courts in accordance with the state's procedural rules.

*Wainwright*, 433 U .S. at 85-87; See Discussion, II, B, 1, *supra*.

Petitioner first presented these claims to the state courts in his Motion for Relief from

Judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule

21

6.508(D), which provides, in part, that a court may not grant relief to a defendant if the Motion for Relief from Judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  See Mich. Ct. R. 6.508(D)(3).  The United States Court of Appeals for the Sixth Circuit has recently held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court denied relief on procedural grounds.  The trial court cited Michigan Court Rule 6.508(D)(3)(a) and concluded that Petitioner had not shown cause, i.e., that appellate counsel was ineffective, or prejudice because his underlying claims lacked merit, nor had he demonstrated his actual innocence.  Accordingly, these claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 753.

Petitioner attempts to assert, in claim seven, ineffective assistance of appellate counsel as cause to excuse the procedural default of these claims.  Petitioner has not shown that appellate

22

counsel was ineffective.  In order to establish ineffective assistance of appellate counsel,

Petitioner must show that counsel's performance was deficient and that the deficient

performance prejudiced the defense.  *Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d

823, 828 (6th Cir. 1994); See section III, B, *supra*.  It is well-established that a criminal

defendant does not have a constitutional right to have appellate counsel raise every non-frivolous

issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has

explained:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the . . . goal of vigorous and effective advocacy . . . .  Nothing in
> the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly

left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th

Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing

out weaker arguments on appeal and focusing on' those more likely to prevail."  *See Smith v.*

*Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when

ignored issues are clearly stronger than those presented will the presumption of effective

assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.

2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by

omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and

would have resulted in reversal on appeal.  *See Meade v. Lavigne*, 265 F.Supp.2d 849, 870 (E.D.

Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his Motion for Relief from Judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate and viable issues. Petitioner has not shown that appellate counsel's strategy in presenting those claims and not raising the claims contained in the Motion for Relief from Judgment was deficient or unreasonable. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner's defaulted claims lack merit for the reasons stated by the state trial court in denying his Motion for Relief from Judgment. *Montgomery*, No. 03-12257-FC, at 1-7. Additionally, as discussed *supra*, Petitioner has not established that a fundamental miscarriage of justice has occurred. These claims are thus barred by procedural default, lack merit, and do not warrant federal habeas relief.

### E.  Certificate of Appealability

The Court also will decline to issue a Certificate of Appealability (COA) to Petitioner. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). "The district court must issue or deny a [COA] when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *see also Miller-El v. Cockrell* , 537 U.S. 322, 327 (2003) (citing *Slack*).

The Court declines to issue Petitioner a COA; reasonable jurists would not find it debatable whether this Court was correct in its rulings.

## IV.  CONCLUSION

For the reasons stated, the Court: (1) DENIES Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] with prejudice; and (2) DECLINES to issue Petitioner a COA.

IT IS SO ORDERED.


S/Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge


Dated: December 20, 2011

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record and Reginal Montgomery by electronic means or U.S. Mail on December 20, 2011.<br><br>S/Linda Vertriest_____<br>Deputy Clerk |